# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
09/18/2014

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 12-33299 |
| SBMC Healthcare, LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | (Jointly Administered) |
| | § | |
| | § | |
| Marty McVey, Individually, | § | |
| McVey & Co. Investments, LLC | § | |
| | § | |
| Plaintiffs, | § | Adversary No. 14-03126 |
| | § | |
| v. | § | |
| | § | |
| Millard A. Johnson, Individually, | § | |
| and Johnson DeLuca Kurisky & Gould, | § | |
| P.C. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION REGARDING DEFENDANTS' MOTION TO DISMISS, THE TRUST'S MOTION TO INTERVENE, AND PLAINTIFFS' MOTION FOR REMAND
[Relates to Adv. Doc. Nos. 8, 10 & 14]

### I. INTRODUCTION

Marty McVey (McVey) and McVey & Co. Investments, LLC (MCI) (collectively, Plaintiffs) sued attorney Millard A. Johnson (Johnson) and Johnson Deluca Kurisky & Gould (JDKG) (collectively, Defendants) for malpractice, breach of fiduciary duty, and violation of the Texas Deceptive Trade Practices Act (DTPA) in Harris County District Court (the State Court Lawsuit). [Adv. Doc. No. 21-6]. The state court complaint (the Complaint) alleges that Defendants negligently advised McVey to file a Chapter 11 petition on behalf of SBMC

1

Healthcare, LLC (SBMC or Debtor). [*Id.*]. Defendants initiated an adversary proceeding (the Adversary Proceeding) to remove the State Court Lawsuit to this bankruptcy court on April 21, 2014. [Adv. Doc. No. 1]. Pending before the Court are Defendants' motion to dismiss (Motion to Dismiss), the SBMC Liquidating Trust's motion to intervene (Motion to Intervene), and Plaintiffs' motion for remand (Motion for Remand). [Adv. Doc. Nos. 8, 10, & 14].

The Motion to Dismiss asserts that the State Court Lawsuit fails to state a claim upon which relief may be granted because the SBMC Liquidating Trust (as the assignee of the assets of the Debtor's estate), rather than Plaintiffs, owns the causes of action asserted therein. [Adv. Doc. No. 8]. The Motion to Intervene contends that the SBMC Liquidating Trust, as assignee of all causes of the Debtor, has ownership over the State Court Lawsuit causes of action removed to this Court and that therefore the Trust should be allowed to intervene as a party-plaintiff. [Adv. Doc. No. 10]. The Motion for Remand requests that this Court remand the causes of action to state court because the Adversary Proceeding involves claims that are not "related to" bankruptcy. [Adv. Doc. No. 14].

The Court now makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052.[1]  To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to "the Bankruptcy Rules" refers to the Federal Rules of Bankruptcy Procedure.

## II.   FINDINGS OF FACT

Based upon the testimony adduced at the hearings on June 4, 2014 and June 12, 2014, exhibits introduced at these hearings, the pleadings on file, and the docket sheets in both the Main Case and the Adversary Proceeding, the undersigned judge makes the following Findings of Fact:

1.  Harborcove Financial LLC (Harborcove) filed a lawsuit (the Harborcove Lawsuit) against SBMC to collect on a loan obligation that SBMC had pledged and that McVey, as president of SBMC, had personally guaranteed. [Adv. Doc. No. 21-6, p. 3].   Defendants agreed to represent Plaintiffs, in addition to SBMC, in the Harborcove Lawsuit.  [*Id.*]  Defendants had a previous attorney-client relationship with SBMC and Plaintiffs. [*Id.*]; [Pl.[s'] Ex. for Hearing Q2 & Q9].

2.  On May 30, 2013, SBMC filed a voluntary Chapter 11 petition (the Petition Date). [Main Case Doc. No. 1]. As of the Petition Date, McVey was the president of, and 100% equity owner in, SBMC.  [Adv. Doc. No. 21-6, p. 3]. Defendants represented SBMC in its Chapter 11 case. [Main Case Doc. No. 1].

3.  On April 4, 2013, the Court confirmed the Debtor's Chapter 11 plan filed jointly by the Debtor and the Creditors' Committee (the Plan) and docketed an order confirming the plan (the Confirmation Order).   [Main Case Doc. No. 1080]. The Plan, as confirmed, created a liquidating trust (SBMC Liquidating Trust or the Trust) to liquidate the Debtor's assets. [Main Case Doc. Nos. 1054-1 & 1080].

4.  On March 10, 2014, Plaintiffs filed the State Court Lawsuit against Defendants for malpractice, breach of fiduciary duty, and violation of the DTPA. [Adv. Doc. No. 10, p. 3].

3

The Complaint alleges that Defendants negligently advised McVey, as president and sole shareholder of SBMC, to file a Chapter 11 petition for SBMC. [*Id.*].

5. On April 21, 2014, Defendants initiated the Adversary Proceeding by removing the State Court Lawsuit to this bankruptcy court. [Adv. Doc. No. 1]. Removal was pursuant to 28 U.S.C. § 1452, Federal Rule of Bankruptcy Procedure 9027, and Bankruptcy Local Rule 9027-1. [*Id.*].

6. On April 25, 2014, Defendants filed the Motion to Dismiss. [Adv. Doc. No. 8]. Defendants argue that dismissal is appropriate because Plaintiffs lack standing to assert the causes of action in the Complaint as they are derivative of the Debtor's estate. [*Id.*].

7. On April 29, 2014, the SBMC Liquidating Trust filed the Motion to Intervene, which contends that the Trust, as owner, successor-in-interest, and holder of all causes of action of the Debtor, former debtor-in-possession, has ownership of the State Court Lawsuit causes of action. [Adv. Doc. No. 10].

8. On May 8, 2014, Plaintiffs filed the Motion for Remand, which asserts that this Court must remand the causes of action to state court for lack of subject matter jurisdiction, or, alternatively, the Court should mandatorily or permissively abstain from hearing the dispute. [Adv. Doc. No. 14].

9. On June 4, 2014 and June 12, 2014, this Court held hearings on the Motion to Dismiss, the Motion to Intervene, and the Motion for Remand. [Adv. Doc. Nos. 28 & 43].

10. On June 12, 2014, this Court took the matters presented in the Motions under advisement. [Adv. Doc. No. 42].

## III.   CONCLUSIONS OF LAW

**A.   Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

### 1. <u>Jurisdiction</u>

The Plaintiffs contend that this Court does not have jurisdiction to adjudicate the Adversary Proceeding. [Finding of Fact No. 8]. The Defendants and the Trust contend that this Court does have jurisdiction to adjudicate the Adversary Proceeding. [Finding of Fact No. 6]. Whether this Court has jurisdiction over the claims set forth in the Adversary Proceeding is determined by interpreting an exculpatory provision in the Plan, as approved by the Confirmation Order. This Court has jurisdiction to interpret and enforce its own orders. Indeed, a bankruptcy court's original core jurisdiction continues in order for it to enforce its orders, even after the case has been closed. *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002); *New Nat. Gypsum Co. v. Nat. Gypsum Co. Settlement Trust (In re Nat'l Gypsum Co.),* 219 F.3d 478, 483 (5th Cir. 2000) ("[T]he bankruptcy court [may] interpret and construe the Confirmation Order, Plan, and plan documents regarding matters as to which there is a substantial and immediate controversy."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (A federal court always has subject matter jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."). Ruling on the Motion to Dismiss and the Motion for Remand necessarily requires the Court to interpret an exculpatory provision in the Plan.  The Court's need to interpret the Plan, which this Court confirmed in the Confirmation Order, is the initial basis for the Court's jurisdiction over the instant dispute.

Then, to the extent that this Court's interpretation of the Plan and Confirmation Order leads this Court to conclude that any of the claims are "core" or "related to", this Court has jurisdiction to adjudicate these claims pursuant to 28 U.S.C §§ 1334(b) and 157(a).  For the reasons set forth below, this Court concludes that it does not have subject matter jurisdiction over some of the causes of action asserted in the Complaint (namely, the direct claims of the Plaintiffs); but that it does have subject matter jurisdiction over other causes of action set forth in the Complaint (namely, the derivative claims). The causes of action over which this Court does not have subject matter jurisdiction are not even related to this Chapter 11 case; those causes of action over which this Court does have subject matter jurisdiction are, at the very minimum, related to this Chapter 11 case.

## 2. **Venue**

Venue is proper pursuant to 28 U.S.C. § 1409(a).

## 3. **Constitutional Authority to Enter a Final Order**

In the wake of the Supreme Court's issuance of its opinion in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute brought before it.  In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.  In sharp contrast, the dispute before this Court is **not** a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(C).  Rather, this dispute requires the Court to interpret certain language in the Plan, which it confirmed in this case. Because *Stern* is replete with language emphasizing that the

6

ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here.

Alternatively, even if *Stern* applies to all disputes rather than to just § 157(b)(2)(c) matters, this Court still concludes that it has the authority to enter a final order here. Unlike *Stern*, the Adversary Proceeding does not involve solely questions of state law. Rather, this dispute requires interpretation and enforcement of the Plan—that is, whether a clause in the Plan that assigns certain causes of action to the Trust bars the Plaintiffs from bringing these claims and whether an exculpatory language releases the Defendants from all of the claims brought by the Plaintiffs. Thus, resolution of the dispute is not based solely on state law, but instead concerns the interpretation and enforcement of the Plan confirmed pursuant to § 1129 of the Bankruptcy Code. Under these circumstances, this Court concludes that it has the constitutional authority to enter a final order.

Finally, to the extent that this Court denies the Motion to Dismiss, there is no *Stern* concern because such a ruling does not end the litigation on the merits. *See, e.g.*, *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) ("[A]n order in an individual adversary proceeding is not final unless it ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.") (citation omitted) (internal quotation marks omitted).

## B.   Direct and Derivative Claims

The arguments between the parties largely turn on the question of whether the causes of action Plaintiffs have brought are derivative or direct. Thus, a review of direct and derivative claims is appropriate.

7

The standard for determining whether a claim is derivative under Texas law was articulated by the Supreme Court of Texas in *Wingate v. Hajdik.* 795 S.W.2d 717, 719 (Tex. 1990). Stating that "a corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong," the Supreme Court of Texas expanded on the nature of a derivative claim under Texas law, quoting a previous case of its own:

> Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of their stock. This rule is based on the principle that where such an injury occurs each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distributions to the stock holders as dividends, or for such other purposes as the directors may lawfully determine.

*Id.* The relevant considerations are which party suffered the harm and which party would receive relief. If a shareholder's claim would require a demonstration of harm to the corporation in order to succeed, it is a derivative claim. Conversely, a direct claim requires the Plaintiff to demonstrate personal harm. *See In re Skyport Global Commc'ns, Inc.*, 2011 WL 111427 (Bankr. S.D. Tex. Jan. 13, 2011) ("A stockholder who is directly injured, however, does retain the right to bring an individual action for injuries affecting his or her legal rights.").

8

## C.     Motion to Dismiss

The Motion to Dismiss argues that dismissal is appropriate because Plaintiffs lack standing to assert the causes of action in the Complaint because they are derivative of the Debtor's estate. [*Id.*].

### 1.     <u>Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6)</u>[2]

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal when a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When a court considers a Rule 12(b)(6) motion to dismiss, it "generally may rely on the complaint and its proper attachments." *Fin. Acquisition Partners v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006). A court must keep in mind that "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005) (quoting *Shipp v. McMahon,* 199 F.3d 256, 260 (5th Cir. 2000)).

The determination requires a court to "accept[] all well-pleaded facts [of the complaint] as true, viewing them in the light most favorable to the plaintiff." *Torch Liquidating Trust v. Stockstill,* 561 F.3d 377, 384 (5th Cir. 2009) (quoting *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.*), 495 F.3d 191, 205 (5th Cir. 2007)). Accordingly, a Rule 12(b)(6) motion must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rankin v. Wichita Falls,* 762 F.2d 444, 446 (5th Cir. 1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). The motion to dismiss is not a way to resolve factual or legal issues; it merely "tests the formal sufficiency of the statements of the claims for relief." *Jolly v. Klein,* 923 F.Supp. 931, 942 (S.D.

---

[2] Bankruptcy Rule 7012 makes applicable Federal Rule 12(b)(6) to the Adversary Proceeding.

Tex. 1996). Thus, this Court may not look outside of the Complaint when ruling on the Motion

to Dismiss. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp v. Twombly,* 550 U.S. 544, 570 (2007). Specifically, "[f]actual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

"[T]he complaint must contain either direct allegations or permit properly drawn inferences to

support" all facts necessary for proper relief. *Torch Liquidating Trust,* 561 F.3d at 384 (quoting

*Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

2. **The Exculpatory Provision in the Plan Does Not Immunize the Defendants from the Plaintiffs' Claims**

The Plan includes an exculpatory provision limiting the liability of Defendants (the

Exculpatory Provision). [Main Case Doc. No. 1054, p. 34–35, 13.4]. The Exculpatory Provision

states that:

> The Exculpated Persons shall not have or incur any liability to any Person for any
> act taken or omission made in good faith in connection with or in any way related
> to negotiating, formulating, implementing, confirming, or consummating this
> Plan, the Disclosure Statement or any contract, instrument, filing with
> governmental agencies, release, or other agreement or document created in
> connection with or related to this Plan, any prior plan or disclosure statement of
> the Debtor, or the administration of the Bankruptcy Case, nor with respect to any
> liability, claim or cause of action, whether known or unknown, asserted or
> unasserted, belonging to or assertable by the Debtor, the Estate, or the Liquidating
> Trustee against the Exculpated Persons, from the beginning of time until the
> Effective Date unless the act is found to be in violation of the Bankruptcy Code,
> State Law or Federal Law. The Exculpated Persons shall have no liability to any
> Person for actions taken in good faith under or relating to this Plan or in
> connection with the administration of the Bankruptcy Case including, without
> limitation, failure to obtain confirmation of this Plan or to satisfy any condition or
> conditions precedent, or waiver of or refusal to waive any condition or conditions

> precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of this Plan. The releases contained in this paragraph do not apply to violations of the Bankruptcy Code, egregious conduct, gross negligence or willful misconduct as determined by the Bankruptcy Court. The Committee Members and its Counsel are fully exculpated from any and all claims.

*Id.* Definitions within the Plan make clear that the Exculpatory Provision applies to Defendants. The term "Exculpated Person" is defined as "the Debtor and its professionals employed in the Bankruptcy Case, (on and after the Petition Date)." *Id.* Defendants are "professionals employed in the Bankruptcy Case" due to their role as bankruptcy counsel for Debtor. Thus, Defendants are "Exculpated Persons" to whom the protections of the Exculpatory Provision apply. Nevertheless, the Provision is not so broad as to bar Plaintiffs' direct causes of action against Defendants.

Defendants receive protection from the Exculpatory Provision solely in connection with events that occurred during the Debtor's bankruptcy case. In pertinent part, the Provision immunizes Defendants from liability for acts or omissions "in any way related to negotiating, formulating, implementing, confirming, or consummating this Plan, the Disclosure Statement or . . . any prior plan or disclosure statement of the Debtor, or the administration of the Bankruptcy Case." Because the Provision exculpates acts or omissions in connection with the Debtor's "Plan" and "Bankruptcy Case," exculpatory protection necessarily relies on the existence of the Debtor's bankruptcy case. Thus, as drafted, the Exculpatory Provision only limits the liability of

Defendants beginning from the Petition Date going forward.[3] Because the Provision is effective exclusively as to post-petition events, it does not bar Plaintiffs' causes of action that form the substance of this Adversary Proceeding. Plaintiffs' lawsuit is based on events that occurred **prior** to the Debtor's bankruptcy—namely, Defendants' failure to properly draft and enforce a Rule 11 agreement and Defendants negligently advising McVey to file a Chapter 11 petition for SBMC. Because Plaintiffs' lawsuit is based on pre-petition events and the Exculpatory Provision only immunizes Defendants from post-petition acts or omissions, the Provision is ineffective to bar this Adversary Proceeding.

Interpretation of the Exculpatory Provision cannot be broadened to limit the liability of Defendants for pre-petition acts or omissions. Texas law governing releases provides that the language within an exculpatory provision must be narrowly construed. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (holding that "general categorical release clauses are narrowly construed"); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984) ([W]e must narrowly construe general, categorical release clauses."). As the Supreme Court of Texas explained:

> In order to effectively release a claim in Texas, the releasing instrument must "mention" the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged.

*Brady*, 811 S.W.2d at 938. Here, the Exculpatory Provision 'mentions' that the claims to be released are those arising in connection with the existence of the Plan and bankruptcy case—i.e. claims that **necessarily occured post-petition**.  In contrast, pre-petition claims, such as those

---

[3] The Exculpatory Provision includes language that attempts to discharge pre-petition claims. However, as the Court subsequently discusses, the language fails for overbreadth under Texas law.

that are subject of this Adversary Proceeding, are "not clearly within the subject matter of the release" as they are not post-petition claims. Therefore, under Texas law, which requires strict adherence to the subject matter of a release, the Exculpatory Provision cannot be interpreted to release pre-petition claims. *Id.*

To the extent that the language in the Exculpatory Provision that discharges liability for "any claim" arising from "the beginning of time until the Effective Date" attempts to gain pre-petition releases, it is simply too broad. According to Texas law, "the releasing instrument must **'mention'** *the* **claim** to be released." *Id.* (emphasis added). In sharp contrast, the "*any* claim" language in the Exculpatory Provision is quintessentially general. "*Any* claim," by definition, is not a specifically mentioned claim. Thus, the "any claim" language fails for overbreadth under Texas law and cannot be used as a bootstrap to bar prepetition claims. In sum, Texas law mandates that the Court strictly adhere to the subject matter of the Exculpatory Provision, which does not bar Plaintiffs' direct causes of action based upon pre-petition events.

3. <u>**The Allegations, Which Must Be Taken as True, Demonstrate that McVey and MCI Have Personal Causes of Action that Survive the 12(b)(6) Inquiry**</u>

Defendants plead that, even if all facts are taken as true, Plaintiffs lack standing to assert the causes of action in the Complaint and therefore dismissal is appropriate. [Adv. Doc. No. 8, p.5]. Specifically, Defendants argue that McVey suffered only indirect harm on account of his status as shareholder of the Debtor, and thus these causes of action are derivative of SBMC. [*Id.*]. Defendants further assert that all Plaintiffs' causes of action could have been brought by SBMC, as of the Petition Date, making them property of the Debtor's estate, or more precisely the Trust, pursuant to § 541(a)(1) of the Code. [*Id.*]. This argument fails to take into account that the

13

Complaint alleges that Plaintiffs suffered personal injury when creditors of SBMC sued McVey and MCI in their individual capacities as guarantors of SBMC's debts.

Moreover, even if the Debtor (or, as of now, the Trust) has derivative claims, it does not preclude a third-party's direct causes of action based on the same underlying transaction or occurrence. As Plaintiffs point out, "it is entirely possible for a bankruptcy estate and a creditor to own separate claims against a third party arising out of the same general series of events and broad course of conduct." *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 585 (5th Cir. 2008). Put differently: "the fact that the bankruptcy estate may have claims for its own direct injuries that it could have brought as of the commencement of the case does not mean that the creditor's claims are merely derivative of the debtor's." *In re R.E. Loans LLC*, 2014 WL 465301 (Bankr. N.D. Tex. Feb. 5, 2014) (referencing the holding of *Seven Seas*). Accordingly, as set forth below, this Court will dismiss the derivative claims asserted in the Complaint, but will not dismiss those claims in the Complaint that are the direct claims of the Plaintiffs.

### a. Summary of Allegations in the Complaint

The following is a summary of the allegations in the Complaint:

- Defendants agreed to represent SBMC in addition to McVey and MCI in the Harborcove Lawsuit. [Adv. Doc. No. 21-6, p. 3]. Harborcove filed the Harborcove Lawsuit to foreclose on SBMC assets in order to recover SBMC's loan obligations to Harborcove, which Mcvey, as president of SBMC, had personally guaranteed. [*Id.*].

14

- Johnson drafted a Rule 11 Agreement to postpone the foreclosure proceedings sought in the Harborcove Lawsuit in order to allow McVey time to sell SBMC's assets to satisfy the debt owed to Harborcove. [*Id.* at p. 4].

- Johnson thwarted the fundamental purpose of the Rule 11 Agreement—to forestall foreclosure proceedings—because he failed to include in the Agreement a provision that would prevent Harborcove from selling its note to a third party who could then foreclose on the collateral. [*Id.* at p. 5]. If the Rule 11 Agreement had been properly drafted and enforced, it would have delayed Harborcove from foreclosing on the collateral and any third party assignee of the note would have been required to restart foreclosure proceedings. [*Id.* at p. 6].

- Instead of filing an injunction, temporary restraining order, or some other action to enforce the Rule 11 Agreement to prevent foreclosure, Johnson advised McVey that SBMC needed to file Chapter 11 bankruptcy as it was the only means to forestall foreclosure. [*Id.* at p. 5].

- Johnson pressured McVey to file SBMC's Chapter 11 petition when he advised McVey that there was "no option other than bankruptcy and it had to be done the next day to prevent the foreclosure." [*Id.*]. This very tight deadline prevented McVey from obtaining a second legal opinion. [*Id.* at p. 6]. Johnson never explained to McVey the pros and cons of filing bankruptcy or the potential risks involved. [*Id.*].

- Johnson convinced McVey to lobby for JDKG to be retained as special counsel in the bankruptcy and did not explain to McVey that, by agreeing to have

15

Defendants represent the Debtor, he would be giving up his attorney-client relationship with Johnson and JDKG due to a conflict of interest and would thus be left without his own individual counsel in the Chapter 11 case and any related adversary proceedings.

- SBMC's bankruptcy eventually resulted in a foreclosure "fire sale" of most of the Debtor's tangible assets at bottom dollar. [*Id.* at p. 8]. McVey, the president and 100% shareholder of SBMC, lost the opportunity to sell or lease SBMC to recover its market value. [*Id.*]. Various SBMC creditors, including the Internal Revenue Service (IRS), were left unsatisfied after bankruptcy and sought to recover their loan obligations from Plaintiffs, as guarantors. [*Id.*]. The IRS filed a $1.4 million lien against McVey personally. [*Id.*]. Other SBMC creditors filed lawsuits against McVey and MCI for over $1.2 million. [*Id.*].

### b. *Direct Causes of Action*

Plaintiffs assert personal injuries in the Complaint and therefore have direct causes of action. The Complaint alleges that Plaintiffs had a personal attorney-client relationship with Defendants during which Defendants breached their fiduciary duty to Plaintiffs by negligently advising McVey to file a Chapter 11 bankruptcy on behalf of SBMC. [*Id.* at pp. 3–6]. As a result of Defendants' alleged negligence, Plaintiffs contend that they suffered losses when unpaid SBMC creditors sued Plaintiffs, in their individual capacities as guarantors, to recover obligations owed by SBMC. [*Id.* at p. 8]. In connection with these lawsuits, Plaintiffs incurred defense costs and had judgments entered against them personally after SBMC failed to pay the debts through its bankruptcy. [Adv. Doc. No. 17-1, p. 13]. The harm that Plaintiffs allegedly

16

sustained in connection with lawsuits filed against them in their individual capacities is personal and entirely distinct from any harm suffered by SBMC. Therefore, Plaintiffs' causes of action against Defendants for negligence, breach of fiduciary duty, and violation of the DTPA that are based on suits filed against them by SBMC creditors are Plaintiffs' direct causes of action that should not be dismissed. *In re Skyport Global Commc'ns, Inc.*, 2011 WL 111427 (Bankr. S.D. Tex. Jan. 13, 2011) (holding that dismissal is proper for a derivative cause of action, but not for a direct cause of action).

### c. Derivative Causes of Action

The Complaint also asserts injury based on loss of value to SBMC stock, a derivative cause of action belonging to SBMC—the corporation—or, more precisely, SBMC's estate. Specifically, Plaintiffs allege that the total debt owed by SBMC was approximately $8 million and that McVey was negotiating a letter of intent to sell SBMC's real property for $15 million. [Adv. Doc. No. 21-6, p. 7]. The Complaint asserts that, as a result of SBMC's bankruptcy filing: (1) McVey lost the opportunity to sell SBMC's real property and assets to recover their fair market value; (2) SBMC's assets were liquidated at bottom dollar; and (3) no other creditors but Harborcove—and certainly not Mcvey, the 100% shareholder of SBMC—received any proceeds from the liquidation. [*Id.* at p. 8].

Inasmuch as the Complaint quantifies the harm suffered by McVey as the loss of value to his SBMC shares, it is not distinct from harm suffered by SBMC, the corporation. A claim of loss for devaluation of stock is a derivative cause of action that belongs exclusively to SBMC,

the corporation, or, in this case, SBMC's estate (i.e. the Trust).[4] Thus, McVey, as "individual stockholder[,] ha[s] no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of [his] stock." *Wingate*, 795 S.W.2d at 719; *see also See Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992) (holding that a shareholder lacks standing to bring a suit based on loss in value to his or her shares as this injury derives from, and thus is not distinct from, the injury to the corporation). Because the causes of action based on devaluation of SBMC stock are derivative, they belong exclusively to SBMC's estate and should be dismissed for lack of standing.

### d. Conclusion

Assuming, as this Court must, that all allegations in the Complaint are true, the Motion to Dismiss will be denied as to the direct causes of action and granted as to the derivative causes of action. Plaintiffs have direct causes of action for malpractice, breach of fiduciary duty, and violation of the DTPA based on allegations of personal injury suffered in connection with lawsuits filed against them individually. These claims will not be dismissed. In contrast, Plaintiffs' causes of action for malpractice, breach of fiduciary duty, and violation of the DTPA based on devaluation of SBMC stock are derivative of the Debtor's estate. These claims will be dismissed with prejudice as to the Plaintiffs for lack of standing.

---

[4] Section 9.1 of the Plan expressly states that "all assets of the Estate shall vest in the Liquidating Trust upon the Effective Date. . . ." Further, § 9.3 of the Plan expressly sets forth that all causes of action of the Debtor and of the Estate shall vest in the Trust. Thus, any cause of action in the Complaint that is a derivative claim is a cause of action that vested in the Trust upon the Effective Date and may be prosecuted only by the Trust, not by the Plaintiffs.

**D.     Motion to Intervene**

The Motion to Intervene asserts simply that intervention is appropriate because the Trust owns the majority, if not all, of the claims that Plaintiffs brought in the State Court Lawsuit (now the Adversary Proceeding). [Adv. Doc. No. 10, p. 3]. This Court will deny the Motion to Intervene as it fails to sufficiently set forth a claim as required by Rule 24(c) of the Federal Rules of Civil Procedure.[5]

Rule 24(c) requires a motion to intervene to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Interpreting this rule, the Fifth Circuit has held that an intervenor must state a "well-pleaded" claim. *See Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986) (citing *Teachers v. Norberg*, 630 F.2d 850, 854–55 (1st Cir. 1980)) ("[I]ntervention under Rule 24 is conditioned by the Rule 24(c) requirement that the intervenor state a well-pleaded claim or defense to the action."). The Fifth Circuit has explained that "[t]he determination of whether **the proposed intervenor's complaint** states a cause of action is controlled by the 'general rules on testing a pleading'; the factual allegations of the complaint are assumed to be true." *Pin*, 793 F.2d at 1450 (emphasis added) (internal quotation marks omitted).

Rule 24(c), as interpreted by the Fifth Circuit, requires a motion to intervene to include a well-pleaded complaint. Here, the Motion to Intervene failed to attach a proposed complaint. Indeeed, the Motion itself does not even allege any causes of action against the Defendants. The Motion is therefore woefully inadequate. The Trust rests its entire argument for why intervention is appropriate on two sentences: "Pursuant to the Plan and Confirmation Order, the Trust owns

---

[5] Bankruptcy Rule 7024 makes applicable Federal Rule 24 to the Adversary Proceeding.

the majority of the claims that have been brought in the State Court Case (and now the Adversary) if not owning all of them. Therefore, the Trust is the proper Plaintiff." [Adv. Doc. No. 10, p. 3]. Given the lack of substance in the Motion to Intervene, the Court will deny the Motion for failure to plead a cause of action in compliance with FRCP Rule 24(c).

### E.    Motion for Remand

The Motion for Remand states that this Court must remand the Adversary Proceeding to state court for lack of subject matter jurisdiction, or, in the alternative, abstain from adjudicating the dispute as it is not "related to" the pending bankruptcy case. [Adv. Doc. 14, pp. 1–2]. *This Court will address each of Plaintiffs' arguments for remand below in turn, but only as applied to Plaintiffs' direct causes of action, as the Court has already found that the derivative causes contained in the Complaint will be dismissed with prejudice to the Plaintiffs' refiling.*

### 1.    Remand Is Appropriate Because the Court Lacks Subject Matter Jurisdiction over Plaintiffs' Direct Causes of Action

As a preliminary point, the dispute before this Court is a post-confirmation lawsuit. The Plan was confirmed on April 4, 2013. [Finding of Fact No. 3]. Plaintiffs brought the State Court Lawsuit on March 10, 2014. [Finding of Fact No. 4]. Defendants initiated the Adversary Proceeding to remove the State Court Lawsuit to this bankruptcy court on April 21, 2014. [Finding of Fact No. 5].

Analysis of a bankruptcy court's subject matter jurisdiction over post-confirmation suits begins with 28 U.S.C. § 1334(b). *In re U.S. Brass*, 301 F.3d 296, 303–04 (5th Cir. 2002); *In re Coho Energy, Inc.*, 309 B.R. 217, 220 (Bankr. N.D. Tex. 2004). Section § 1334(b) defines jurisdiction conjunctively as either "arising under," "arising in," or "related to" a case under Title

11. 28 U.S.C. § 1334(b). Bankruptcy proceedings are referred to as either "core" or "non-core" proceedings. 28 U.S.C. § 157. Core proceedings "arise under" title 11 or "arise in" a case under title 11. 28 U.S.C. § 157(b). Non-core proceedings are those proceedings that are otherwise "related to a case" under title 11. 28 U.S.C. § 157(c)(1). In order for a bankruptcy court to have jurisdiction over a proceeding, the proceeding must be at least "related to" the Chapter 11 case. *In re U.S. Brass,* 301 F.3d at 304 ("Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.").

This Court finds that the dispute between Plaintiffs and Defendants is not "related to" the pending bankruptcy case. Thus, the Court will remand the Adversary Proceeding to state court. Further, even if the Court were to consider the Adversary Proceeding "related to," remand would nevertheless be appropriate because Texas state courts have jurisdiction over Plaintiffs' causes of action given that they are based entirely on state law. *Graber v. Fuqua,* 279 S.W.3d 608, 611 (Tex. 2009).

### a. *The Plaintiffs' Direct Causes of Action Are Not "Related To" the Pending Chapter 11 Case*

A key Fifth Circuit case involving "related to" jurisdiction is *In re Craig's Stores of Texas, Inc.,* 266 F.3d 388 (5th Cir. 2001). There, the Fifth Circuit stated that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." 266 F.3d at 390 (citations omitted). The dispute in *Craig's Stores* involved a reorganized debtor that sued a bank asserting a claim for breach of contract 18 months after a plan was confirmed. *Id.* at 389. In deciding whether the bankruptcy court had jurisdiction over the suit, the Fifth

Circuit identified three factors pertinent to the jurisdiction inquiry: (1) whether the claim at issue principally deals with pre-confirmation relations between the parties; (2) whether there was antagonism between the parties as of the date of the plan confirmation; and (3) whether there are any facts or law deriving from the reorganization or the plan that are necessary to the claim. *Id.* at 391.   Finding that the state law dispute arose post-confirmation and did not involve interpretation or execution of the plan, the Fifth Circuit dismissed the case for lack of jurisdiction because it was not even "related to" the bankruptcy. *Id.*

Applying these factors to the instant Adversary Proceeding supports Plaintiffs' arguments that this Court lacks "related to" jurisdiction over Plaintiffs' causes of action:

> (1) whether the claim at issue principally deals with pre-confirmation relations between the parties

The causes of action are based on the allegation that Defendants negligently advised McVey to file a Chapter 11 petition for SBMC. Accordingly, the claims at issue principally deal with pre-confirmation relations between the parties.  This factor favors jurisdiction.

> (2) whether there was antagonism between the parties as of the date of the plan confirmation

The Plan was confirmed on April 4, 2013.  [Finding of Fact No. 3]. Plaintiffs filed the State Court Lawsuit against Defendants on March 10, 2014. [Finding of Fact No. 4]. Accordingly, the facts indicate that antagonism between the parties arose **after** the Plan was confirmed. This factor weighs against jurisdiction.

> (3) whether there are any facts or law deriving from the reorganization or the plan that are necessary to the claim

Neither Plaintiffs nor Defendants are the Debtor, and thus the State Court Lawsuit involves non-debtor parties. Further, the Plaintiffs' direct causes of action are entirely based on state law and stem from pre-petition events. For these reasons, resolution of the direct causes of action does not (1) implicate bankruptcy law; (2) affect the Debtor's estate;[6] or (3) require implementation or interpretation of the Plan.[7] This factor therefore weighs heavily against jurisdiction.

In sum, two out of three *Craig's Stores* factors counsel against "related to" bankruptcy jurisdiction. Therefore, this Court concludes that it does not have "related to" jurisdiction over the Plaintiffs' direct causes of action.

Further, this Court concludes that it lacks jurisdiction even under a less exacting standard than that found in *Craig's Stores*. In the 2005 case of *In re Stonebridge Technologies, Inc.*, 430 F.3d 260, which also involved an issue of post-confirmation jurisdiction, the Fifth Circuit articulated bankruptcy jurisdiction as a generalized inquiry:

> To determine whether a particular matter falls within general bankruptcy jurisdiction, we ask whether the outcome of that proceeding could have any **conceivable** effect on the estate being administered in bankruptcy. More specifically, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

---

[6] Once the Plan was confirmed, there was no longer any estate. *Craig's Stores*, 266 F.3d at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."). Rather, the assets of the Debtor's estate were transferred to the Trust pursuant to Article 9 of the Plan. Accordingly, hereafter in this Opinion, any reference to the Debtor's estate is actually a reference to the assets of the Trust.

[7] This Court, as already discussed in this Opinion, needed to interpret the Exculpatory Provision in order to determine whether the causes of action asserted in the Complaint are direct or derivative. The Court's interpretation has led it to conclude that some of the causes of action are direct and others are derivative. Having determined which causes of action are direct, the resolution of theses causes of action must be now be achieved through application of state law governing negligence, breach of fiduciary duty, and deceptive trade practices, not through interpretation of Plan provisions.

23

430 F.3d at 266 (emphasis added) (citations omitted) (internal quotation marks omitted). Application of this expansive characterization of jurisdiction does not vest this Court with jurisdiction over the Adversary Proceeding. Here, the dispute between Plaintiffs and Defendants is between non-debtor parties. Regardless of which side prevails, the result of the lawsuit will not enhance or diminish the Debtor's estate (the Trust's assets). Further, Plaintiffs' causes of action are entirely based upon state law—not bankruptcy law.  No rights would be created for the benefit of the Trust, as the claims belong individually to Plaintiffs. Thus, resolution of the Adversary Proceeding has no conceivable effect on the bankruptcy estate (i.e. the Trust's assets). Because the *Craig's Stores* factors are not met and the dispute does not qualify as even broadly "related to" the Debtor's bankruptcy estate, remand is appropriate.

### b.  *Even If this Court Has Jurisdiction Over Plaintiffs' Direct Causes of Action, Remand Is Appropriate Because the State Court Has Concurrent Jurisdiction*

Defendants argue that remand is inappropriate because the Adversary Proceeding is a core proceeding.  Specifically, Defendants contend that this Proceeding "arises in" or "arises under" the Debtor's bankruptcy case because, among other reasons, (1) the dispute involves the administration of the SBMC estate; and (2) the dispute requires a "claims analysis." [Adv. Doc. No. 23, pp. 4–5].  Plaintiffs' proffered reasons for qualifying the Proceeding as core do not persuade this Court. The lawsuit between Plaintiffs and Defendants—all of whom are non-debtor parties—does not implicate the administration of the estate (i.e. the Trust's assets) or require an analysis of claims against the estate.

Defendants point to *In re Southmark Corp.*, 163 F.3d 925 (5th Cir. 1999), to support their contention that this Proceeding is core. In *Southmark*, the Fifth Circuit held that removed

24

malpractice claims are core proceedings when they relate to events occurring during the bankruptcy case. *Id.* at 927.  In their discussion of *Southmark*, Defendants omit a crucial fact—the plaintiff in *Southmark* was the debtor.  *Id.* at 927;  [Adv. Doc. No. 23, p. 6].  In fact, the *Southmark* court based its reasoning on the fact that defendant accountants owed a fiduciary obligation to **the debtor** and were thus "responsible for managing the debtor's estate in the best interest of creditors." *Southmark*, F.3d at 931 (5th Cir. 1999). Unlike *Southmark*, Plaintiffs here are not the Debtor. Thus, this dispute does not raise the issue of Defendants' fiduciary obligation to the Debtor or Defendants' responsibility for representing the Debtor's estate in the best interest of creditors.  *ICM Notes, Ltd. v. Andrews & Kurth, L.L.P.*, 278 B.R. 117, 123 (S.D. Tex. 2002) *aff'd sub nom. In re ICM Notes Ltd.*, 324 F.3d 768 (5th Cir. 2003) (holding that an attorney for a debtor owes a general fiduciary duty to preserve the bankruptcy estate).  As Plaintiffs' causes of action do not turn on the fiduciary obligation between Defendants and the Debtor, there is no jurisdictional hook to qualify this Proceeding as core under *Southmark*.

Even if the Adversary Proceeding were a core proceeding, the Court would not be required to retain jurisdiction. Where a cause of action is based entirely on state law, Texas state courts retain concurrent jurisdiction:

> Unlike "cases under [the Bankruptcy Code]," over which federal courts possess exclusive jurisdiction, state and federal courts share concurrent jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]."  28 U.S.C. § 1334(a)–(b). Indeed, a malicious prosecution claim predicated on conduct in an adversary proceeding does not fall within the federal courts' exclusive section 1334(a) jurisdiction.

*Graber*, 279 S.W.3d at 611. *See also In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 67 (1st Cir. 2002) (holding that a bankruptcy court does not have exclusive jurisdiction over third

party claims against non-debtor parties, as such claims are not "cases under title 11."). Here, Plaintiffs' causes of action are based entirely on state law: negligence, breach of fiduciary duty, and violation of the DTPA. Thus, even if this Court had jurisdiction over the Adversary Proceeding based on classification of the Proceeding as "core" or "related to," such jurisdiction would be concurrent with Texas state courts. Because Texas state courts have jurisdiction over Plaintiffs' state law causes of action (as they are based entirely on state law), remand is appropriate notwithstanding classification of the Adversary Proceeding as "core" or "related to."

### 2. **Abstention Is Appropriate with Respect to the Plaintiffs' Direct Claims**

A bankruptcy court has the power to abstain from hearing a dispute notwithstanding the fact that a proceeding is related to a case under title 11 or arising in or under title 11. 28 U.S.C. § 1334(c). Abstention may be mandatory or permissive. 28 U.S.C. § 1334(c). As discussed below, this Court finds mandatory abstention or, in the alternative, permissive abstention appropriate.

#### a. *Mandatory Abstention Is Not Appropriate*

Mandatory abstention is warranted if: (1) a party files a motion requesting mandatory abstention; (2) the proceeding is based upon a state law claim or cause of action that is not arising in or arising under title 11; (3) the action was commenced in state court; and (4) the state court can timely adjudicate the action. *See* 28 U.S.C. § 1334(c)(2). The Plaintiffs, as the parties moving for mandatory abstention, have the burden to satisfy the fourth element. *In re Doctors Hosp., 1997, L.P.*, 351 B.R. 813, 846 (Bankr. S.D. Tex. 2006). The Court finds that the Adversary Proceeding meets only the first three requirements, and thus mandatory abstention is inappropriate:

(1) Plaintiffs moved the Court to mandatorily abstain from deciding the dispute. [Adv. Doc. No. 15, p. 8]. Thus, the first element is met.

(2) Plaintiffs' direct causes of action are entirely based on state law and do not arise in or arise under title 11. [*See* discussion *supra* Part D.1.]. Thus, the second element is met.

(3) Plaintiffs initiated the litigation that is the basis of this Adversary Proceeding in state court (i.e. the State Court Lawsuit). [Finding of Fact No. 4]. Thus, the third element is met.

(4) Plaintiffs have introduced no evidence into the record that the Harris County District Court can timely adjudicate the Plaintiffs' direct causes of action. Granted, the Plaintiffs included certain documents in their exhibit booklet to attempt to meet their burden on this element, but the Plaintiffs failed to actually have this Court admit these exhibits (which, it should be noted, contained rank hearsay). The result is that this Court has only the naked assertion of counsel for the Plaintiffs that the dispute can be timely adjudicated in state court. Such an assertion, however, is not evidence and is therefore insufficient to satisfy the Plaintiffs' burden on this issue.

Because the Plaintiffs have failed to satisfy all four elements necessary to prove up mandatory abstention, this Court declines to abstain under 28 U.S.C. § 1334(c)(2).

### b. Even Though Mandatory Abstention Is Not Appropriate, Permissive Abstention Is Appropriate with Respect to the Plaintiffs' Direct Claims

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may permissively abstain "from hearing a proceeding arising under title 11 or arising in or related to a case under title 11." 28

27

U.S.C. § 1334(c)(1).  The bankruptcy court has "broad power to abstain whenever appropriate."

*In re Wood*, 825 F.2d at 93.

### i. Factors of permissive abstention

Factors a court may consider when deciding whether to abstain include:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficult or unsettled nature of applicable law;
(4) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
(5) the jurisdictional basis, if any, other than § 1334;
(6) the degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden on the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of nondebtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

### ii. Application of the permissive abstention factors

Application of the factors of permissive abstention to this Adversary Proceeding

overwhelmingly favors abstention:

(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention

The instant dispute involves non-debtor parties.  The outcome of the litigation will not

deplete or increase the estate (here, the assets of the Trust). Because the dispute does not

implicate the estate or the Debtor, abstention would not affect efficient administration of the

estate (i.e. the Trust).  This factor therefore favors abstention.

(2) the extent to which state law issues predominate over bankruptcy issues

All of the Plaintiffs' causes of action present are based entirely upon state law; they are suing for negligence, breach of fiduciary duty, and violations of the DTPA. The Plaintiffs are not, for example, suing the Defendants for violation of the automatic stay or breach of one of this Court's orders in SBMC's Chapter 11 case.   Under these circumstances, state law issues predominate over bankruptcy issues, and this second factor therefore favors abstention.

(3) the difficult or unsettled nature of applicable law

Plaintiffs' direct causes of action are state law claims for negligence, breach of fiduciary duty, and violation of the DTPA.   Because Plaintiffs' claims are "garden variety" state law claims, the applicable law cannot be categorized as "difficult or unsettled." Additionally, the causes of action are entirely based on state law principles to which state courts are "better able to respond." *In re Comtek Electronics, Inc.*, 23 B.R. 449, 451 (Bankr. S.D.N.Y. 1982). This factor favors abstention.

(4) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding

Plaintiffs initially sued the Defendants in Harris County District Court. [Finding of Fact No. 4]. This factor therefore favors abstention.

(5) the jurisdictional basis, if any, other than § 1334

This Court has concluded that, in the first instance, bankruptcy jurisdiction under § 1334 is lacking with respect to the Plaintiffs' direct claims. [*See* discussion *supra* Part D.1.a.]. Because this Court has found that it lacks jurisdiction under § 1334, this factor heavily favors abstention.   Moreover, even if this Court has jurisdiction over the Plaintiffs' direct causes of

29

action under § 1334, this statute is the only basis on which jurisdiction rests. These circumstances also favor abstention.

(6) <u>the degree of relatedness or remoteness of proceeding to the main bankruptcy case</u>

This Court has decided that, in the first instance, the Plaintiffs' direct claims are not "related to" the Debtor's Chapter 11 case. [*See* discussion *supra* Part D.1.a.]. However, even if the Court considers these claims to be related to the Debtor's bankruptcy, the relation is remote. The dispute involves: (1) entirely non-debtor parties; (2) events occurring prior to bankruptcy; and (3) exclusively non-bankruptcy issues. Considering that this dispute is either not related to, or only remotely related to, SBMC's Chapter 11 case, this factor favors abstention.

(7) <u>the substance rather than the form of an asserted core proceeding</u>

The Court has concluded that Plaintiffs' direct causes of action are not core, [*see* discussion *supra* Part D.1.a.], thereby making this factor moot. Nevertheless, even if the Plaintiffs' direct claims were core, as the Defendants contend, the substance of the dispute consists entirely of state law causes of action based on the rights of and relationship between entirely non-debtor parties. These circumstances favor abstention.

(8) <u>the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court</u>

As discussed above in factor seven (7), this Court does not believe that the Plaintiffs' direct claims constitute core bankruptcy matters. Accordingly, this factor is moot. Even if these claims were core, as the Defendants contend, the dispute consists entirely of state law causes of action, and the Court cannot identify any bankruptcy matters from which to sever these state law claims. Considering that severance of claims is not a concern, this factor favors abstention.

(9) <u>the burden on the bankruptcy court's docket</u>

This Court has sufficient time and resources available to adjudicate the dispute between the Plaintiffs and the Defendants.  This factor therefore weighs against abstention.

(10) <u>the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties</u>

Plaintiffs accuse Defendants of forum shopping, alleging that Defendants' motive for removing this Proceeding was based on: (1) familiarity with this Court due to the main bankruptcy case; (2) the fact that an attorney for Debtor's counsel previously interned for this Court; and (3) the desire to divest Plaintiffs of the right to a jury trial. [Adv. Doc. Nos. 15-1, p. 25].  The Court is not convinced by these arguments. Rather, it appears that Defendants' motivation for removal lies in their good faith belief that Plaintiffs' causes of action are either derivative of the Debtor and thus belong to the Debtor's estate (now, the Trust) rather than Plaintiffs, or that the Plaintiffs' claims are barred due to the Exculpatory Provision. [Adv. Doc. No. 8, p.5].  Under these circumstances, this Court finds that this factor disfavors abstention.

(11) <u>the existence of a right to a jury trial</u>

Plaintiffs argue that this factor favors abstention because "if [Defendants] do not consent to a jury trial in this Court, it will be statutorily impossible for this Court to conduct a jury trial in this adversary proceeding." [Adv. Doc. No. 15-1, p.  25]. Defendants, however, consent to a jury trial in this Court. [Adv. Doc. No 23, p. 13]. This factor, therefore, favors retention.

(12) <u>the presence in the proceeding of nondebtor parties</u>

Both Plaintiffs and Defendants are non-debtor parties.   Thus, this factor favors abstention.

31

(13) Comity

Plaintiffs had already instituted their suit in Texas state court when Defendants removed the lawsuit to this Court. [Finding of Fact No. 4 & 5]. Thus, this factor favors abstention.

(14) the possibility of prejudice to other parties in the action.

Plaintiffs argue that Defendants' failure to consent to a jury trial in this Court gives rise to a "possibility of prejudice" to Plaintiffs. As stated in factor eleven (11), Defendants have consented to a jury trial. Plaintiffs' only argument for potential prejudice is therefore no longer relevant, and this factor favors retention.

### iii. As applied to this dispute, the factors favor permissive abstention

Ten (10) of the fourteen (14) permissive abstention factors favor abstention. Because, in the first instance, many more factors favor abstention than favor retention, this Court concludes that abstention is appropriate. Moreover, case law holds that this Court, in its discretion, may give greater weight to certain of these fourteen (14) factors. *See In re Lazar*, 200 B.R. 358, 373 (Bankr. C.D. Cal. 1996) ("No single factor is dispositive, and the decision does not turn on a counting of the number of factors on each side. Rather, a court must consider each of the factors and the evidence relating thereto, and weigh its importance in the decision on discretionary remand.").

Here, this Court gives significant weight to the fact that: (a) the resolution of the Plaintiffs' direct claims does not implicate the estate—that is, the assets of the Trust—or the distributions that are to be made to creditors under the Plan (factor number 1); (b) the law governing the dispute is entirely Texas state law (factor number 2); (c) this Court has no subject matter jurisdiction over the Plaintiffs' direct claims, or even if it does, the only jurisdictional

basis is 28 U.S.C. § 1334 (factor number 5); and (d) all of the parties in this dispute are non-debtors (factor number 12). Because the Court gives much greater weight to these factors than to any of the other permissive abstention factors, the argument in favor of abstention is all the more compelling. In sum, this Court concludes that abstention is appropriate and that the Plaintiffs' direct causes of action should be remanded to the Harris County District Court.

Accordingly, for all of the reasons set forth above, this Court concludes that it should permissively abstain from adjudicating the Plaintiffs' direct claims against the Defendants.

## IV.   CONCLUSION

The Court will grant, in part, the Motion to Dismiss, and dismiss with prejudice the causes of action alleging injury due to devaluation of SBMC stock. Plaintiffs lack standing to bring these derivative actions as they belong exclusively to SBMC's estate (i.e. the Trust). Conversely, the Court will deny, in part, the Motion to Dismiss and let stand the Plaintiffs' direct claims for negligence, breach of fiduciary duty, and violation of the DTPA to the extent that the alleged injury suffered relates to third-party lawsuits filed against Plaintiffs, individually, to recover SBMC obligations that the Plaintiffs guaranteed.  Plaintiffs have standing to bring these direct, or personal, actions.

The Court will deny the Trust's Motion to Intervene, which asserts ownership of the derivative causes of action in the State Court Lawsuit.  The Trust failed to attach a proposed complaint and/or a "well-pleaded" claim against Defendants in compliance with Rule 24(c).

The Court will deny, in part, the Motion for Remand as to derivative causes of action based on devaluation of SBMC stock, as the Court dismisses these actions with prejudice as to the Plaintifffs. In contrast, the Court will grant, in part, the Motion for Remand as to the

33

Plaintiffs' direct claims against the Defendants. This Court lacks subject-matter jurisdiction over Plaintiffs' personal causes of action, as they (1) involve non-debtor parties; (2) are based entirely on state law; and (3) will have no conceivable effect on the administration of the bankruptcy estate.   Even if this Court had jurisdiction over these direct claims, remand would still be appropriate because Texas state courts have concurrent jurisdiction over Plaintiffs' state law causes of action.

Although this Court finds that mandatory abstention under 28 U.S.C. § 1334(c)(2) is inappropriate as the fourth factor is not met, permissive abstention is proper under 28 U.S.C. § 1334(c)(1).  This Court has found that ten (10) of the fourteen (14) permissive abstention factors favor abstention; moreover, factors number one (1), two (2), five (5), and twelve (12), to which the Court gives greater weight than the other factors, all strongly favor abstention. Thus, even if this Court has jurisdiction over the Plaintiffs' direct claims, the Court should abstain from adjudicating these claims.  The District Court of Harris County, Texas—not this Court—should adjudicate these claims.

An order consistent with this Memorandum Opinion will be simultaneously entered on the docket.

Signed on this 18th day of September, 2014

Jeff Bohm
Chief United States Bankruptcy Judge

34